Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2018 08:08 AM CST

In re Guardianship of K.R., a minor child.
Heather R., appellant, v. Mark R. and
Cynthia R., Guardians, appellees.

___ N.W.2d ___

Filed December 31, 2018.    No. A-17-846.

1. **Guardians and Conservators: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the lower court where competent evidence supports those findings.
4. **Child Custody: Parental Rights.** There are two competing principles in the area of child custody jurisprudence: the parental preference principle and the best interests of the child principle.
5. **Child Custody.** Courts have long considered the best interests of the child to be of paramount concern in child custody disputes.
6. **Child Custody: Parental Rights.** The principle of parental preference provides that a court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the parent-child relationship or has forfeited that right.
7. **Parental Rights: Guardians and Conservators: Presumptions.** In guardianship termination proceedings involving a biological or adoptive parent, the parental preference principle serves to establish a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent.
8. **Child Custody: Parental Rights.** Under the parental preference principle, a parent's natural right to the custody of his or her child trumps

- 714 -

Nᴇʙʀᴀsᴋᴀ Cᴏᴜʀᴛ ᴏꜰ Aᴘᴘᴇᴀʟs Aᴅᴠᴀɴᴄᴇ Sʜᴇᴇᴛs
26 Nᴇʙʀᴀsᴋᴀ Aᴘᴘᴇʟʟᴀᴛᴇ Rᴇᴘᴏʀᴛs
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

the interest of strangers to the parent-child relationship and the preferences of the child.

9. **Child Custody: Parental Rights: Proof.** For a court to deny a parent the custody of his or her minor child, it must be affirmatively shown that such parent is unfit to perform parental duties or that he or she has forfeited that right.

10. **Parental Rights: Guardians and Conservators: Proof.** An individual who opposes the termination of a guardianship bears the burden of proving by clear and convincing evidence that the biological or adoptive parent either is unfit or has forfeited his or her right to custody. Absent such proof, the constitutional dimensions of the relationship between parent and child require termination of the guardianship and reunification with the parent.

11. **Child Custody: Parental Rights.** While preference must be given to a biological or adoptive parent's superior right to custody where the parent is not unfit and has not forfeited his or her parental rights, a court also considers the child's best interests in making its custody determination.

12. **Child Custody: Parental Rights: Proof.** The parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere.

Appeal from the County Court for Douglas County: Mᴀʀᴄᴇʟᴀ A. Kᴇɪᴍ, Judge. Affirmed.

Julie A. Frank for appellant.

Patrick A. Campagna, of Campagna Law, P.C., L.L.O., for appellees.

Pɪʀᴛʟᴇ, Rɪᴇᴅᴍᴀɴɴ, and Wᴇʟᴄʜ, Judges.

Pɪʀᴛʟᴇ, Judge.

## INTRODUCTION

Heather R. appeals from an order of the Douglas County Court where the court refused to terminate the guardianship over her daughter K.R. and refused to reinstate visitation between Heather and K.R. Based on the reasons that follow, we affirm.

- 715 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

## BACKGROUND

Heather is the biological mother of K.R., born in 2007. Kameron's biological father is unknown. Appellees, Mark R. and Cynthia R., are Heather's parents and K.R.'s grandparents.

On June 27, 2014, appellees filed a petition for appointment of a guardian for a minor, seeking coguardianship of K.R. They also filed a motion for ex parte appointment of guardian, seeking the immediate appointment of guardianship over K.R. The court granted the ex parte motion. Heather filed an answer and an ex parte motion to set aside the ex parte appointment of temporary coguardians.

On August 4, 2014, the court overruled Heather's motion to set aside the ex parte appointment of temporary coguardians. The court also appointed a guardian ad litem for K.R.

On October 29, 2014, an order appointing appellees as coguardians was entered, based on a stipulated agreement between Heather and appellees. The agreement, adopted by the court in its order, required Heather to complete certain requirements. It required her to submit to a psychological evaluation, a chemical dependency evaluation, and a parenting education course. The order also provided a specific parenting time schedule for Heather, with increasing parenting time. The order further required that Heather was not to leave K.R. alone, without proper adult supervision, and that she was to allow K.R. unrestricted access to use a cell phone provided by appellees to call the guardian ad litem or appellees during her visits with Heather.

On March 17, 2015, Heather filed a motion to dismiss the guardianship. A trial date was set for May 6.

On May 4, 2015, the guardian ad litem filed an ex parte motion to suspend visitation between Heather and K.R. because K.R. had disclosed to her therapist that she had been the victim of sexual abuse while in the care of Heather. The trial court entered an order on May 5, suspending visits and canceling the May 6 trial date set for Heather's motion to dismiss the guardianship.

- 716 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

On August 4, 2015, the State filed an information charging Heather with Class IIIA felony child abuse committed from May 1, 2013, through May 14, 2015, for failing to protect K.R. K.R. had identified two minor boys as the sexual perpetrators. The two boys and their family had lived in Heather's apartment for a short period of time. A trial was held on the criminal charge against Heather, and she was found guilty of child abuse. She was sentenced on December 29, 2016, to 18 months' probation.

On April 3, 2017, Heather filed a motion to terminate the guardianship and a motion to reinstate visitation. These are the motions that are the subject of this appeal.

Trial was held on both motions in May and June 2017. Cynthia was the first witness to testify for appellees. Cynthia testified that she does not want the guardianship terminated. She testified that since Heather was sentenced in December 2016, the only communication from Heather has been one email to her husband, Mark, requesting visitation with K.R. Heather had failed to send any other communication, updates, cards, gifts, or letters to K.R. Cynthia also testified that Heather has failed to acknowledge any responsibility, apologize, or express remorse for the sexual abuse K.R. suffered. Cynthia also testified that Heather had failed to provide any documentation, other than her own self-representations, that she had complied with any of the probationary orders of the court.

Cynthia testified that certain things seem to "trigger [K.R.'s] memories of abuse." Cynthia testified that K.R. refuses to go in a bathroom by herself and that she has had trouble with "wet[ting] her pants" at school for 3 years. Cynthia testified K.R. is fearful, has nightmares, sleepwalks, and sometimes wakes up screaming. Cynthia indicated that K.R.'s symptoms have "ebb[ed] and flow[ed]" over time, but that her symptoms recently increased when she became aware of Heather's motion to dismiss the guardianship. Cynthia testified that K.R. saw a letter from the court in appellees' mail and that after seeing the letter, she started hurting herself. She would hit herself, pull

- 717 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

her own hair, and squeeze her cheeks. Cynthia testified that she believed it was too early in Heather's probationary sentence to trust her to have any contact with K.R.

On cross-examination, Cynthia testified that she had not seen Heather for 3 years and did not know anything about her current fitness as a parent. She also testified that she did not know if Heather had completed some of the items required in the order establishing guardianship and that she did not know if Heather was in compliance with her probation order.

Jeanne Cattau, K.R.'s therapist, also testified. She testified that K.R. has been a patient of hers since January 2015 and was brought into therapy by appellees. Cattau testified that K.R. initially began disclosing instances of biting and hitting. She testified that in May 2015, K.R. began disclosing other physical and sexual abuse that had occurred in her home. K.R. originally identified a minor named "Seth" as the primary perpetrator, and then she began making disclosures regarding his older brother and that the abuse occurred on multiple occasions.

Cattau testified that K.R. disclosed being bitten, hit, choked, and drowned. K.R. also told Cattau she had been locked in a bathroom; had been left home alone to care for her younger sister; had seen one of the boys choke her sister; and had also seen one of them sit on her sister's chest, making it difficult for her to breathe. K.R. also reported "being forced to eat dog poop." These incidents occurred when Heather left K.R. and her younger sister alone with Seth and his brothers. Seth was approximately 12 years of age at the time of these events, and K.R.'s younger sister was 2 or 3 years of age. Cattau reported that K.R. is concerned about her younger sister's safety, is concerned that she is not in the home to watch out for her, and wants to see her.

Cattau testified that K.R. revealed that she had told Heather about the abuse by Seth and that Heather questioned Seth about it, but when Seth gave a different version of what had occurred, Heather believed Seth and ultimately blamed and punished K.R. for the sexual activity with Seth. Cattau

- 718 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

testified that K.R. is still working through the guilt and the blame.

Cattau also testified that she was not in favor of visitation between Heather and K.R. at the time of trial and testified as to what steps would need to be taken and what progress needed to be made before she would recommend visitation, supervised or otherwise. Cattau testified that she did not support termination of the guardianship.

Cattau acknowledged that K.R. had recently started to display additional emotional outbursts, such as hitting herself, out of concern for the current proceedings. Cattau also testified that K.R. has told her there had been more abuse in addition to what she had already disclosed but that she was not ready to talk about it. K.R. told Cattau that she felt Heather did not love her and did not care about her because Heather believed Seth instead of her.

Cattau testified on cross-examination that she believed K.R. was being truthful with respect to her disclosures of abuse in Heather's home. Cattau also testified K.R. recalled that Heather told her during visits not to talk about what had happened in their home, specifically not to talk about Seth, because it would "tear the family apart." Cattau stated that Heather's telling K.R. not to talk about the abuse was very concerning because it could increase K.R.'s fears and continue her "sense of guilt."

Cattau admitted that she had only met Heather one time, had never observed Heather and K.R. together, and had not conducted any therapy or performed any evaluation with Heather.

Appellees also called Heather to testify. She testified that she has been married since November 2014 and has lived with her husband since June 30, 2014. She also testified that she was employed at the time of trial.

She testified that she knew in May 2014 about K.R.'s being physically abused—specifically, she knew that Seth had hit and bit her. K.R. was 6 years old at the time. Heather testified

- 719 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

that when she learned about the abuse, she asked the family living with her to move out. Instead of moving out, the family had Seth go live with an aunt. Heather testified that Seth lived in her home for only 2 weeks and that the rest of the family lived there for about a month. She testified that Seth had no additional contact with K.R. after he moved out.

Heather testified that she learned about the sexual abuse in June 2015 when a police officer called to ask her questions. She testified that although K.R. reported to her therapist that she told Heather about the sexual abuse, Heather denied that K.R. had told her. She admitted that she failed to protect K.R., but not intentionally, and since that time, she has made efforts to address her failure. She also testified that she will "have to live with [failing to protect K.R.] for the rest of [her] life" and that she will "never forgive herself."

Heather testified that in 2014, she did a chemical dependency evaluation, a psychological and parental fitness evaluation, and took a parenting class. In 2015, she started seeing a therapist and continued until December 2016. Her therapist released her from therapy, and her probation officer was satisfied with that and indicated she was not going to require Heather to do additional therapy. In 2017, she took another psychological and parental fitness evaluation, another chemical dependency evaluation, and another parenting course.

Heather testified that she has complied with or is working toward complying with every provision of her probation. She acknowledged that there is a no-contact order between her and K.R. and that she has not attempted to contact K.R. She has not spoken to K.R. since she disclosed the sexual abuse in May 2015, because that is when the no-contact order was implemented. Heather denied telling K.R. during visits prior to May 2015 that she should not talk about the abuse by Seth.

After Heather's testimony, Heather motioned for a directed verdict, which the court denied. Heather then presented her evidence, beginning with her own testimony.

- 720 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

Heather testified that she has lived in the same home since June 30, 2014, and that her name is on the lease for her home. She lives in the home with her husband and K.R.'s younger sister. She also testified that she has worked for the same employer since 2014.

Heather testified about the order that established the guardianship and what it required her to do. She testified that it required her to undergo a psychological parenting evaluation, which she did, and that the evaluation recommended she see a therapist to address her low self-esteem issues. She testified that she has completed therapy and was discharged successfully. She testified that she still maintains contact with her therapist and that she can go see her therapist if she feels she needs to or her probation officer requests that she see her. The order required her to have a chemical dependency evaluation, which she did, and which also recommended counseling. She also completed a parenting class, as required in the order establishing the guardianship.

Heather further testified that on her own, she obtained a second psychological and parental fitness evaluation and took another parenting class that specifically addressed dealing with children who have gone through trauma.

She also explained that she did recall K.R.'s talking about Seth during two different visits and that she told K.R. that she did not need to worry about him anymore because he was not around anymore to hurt her. Heather testified that K.R. may have misunderstood what she said.

Dr. Stephanie Peterson, a clinical psychologist, also testified for Heather. She performed two psychological evaluations and parenting assessments of Heather, one in November 2014 and the other in March 2017. Peterson testified that Heather does not have a personality disorder. Her clinical profile was "within normal limits [and] no psychopathology was indicated by her results." Peterson testified that she interviewed appellees and reviewed the documentation they provided and that she could not support their concerns about Heather with any

- 721 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

data. All the data she collected showed that Heather "had all the qualities of an adequate parent."

Peterson testified that at the time she updated Heather's psychological and parenting evaluation in March 2017, Heather "had grown in her knowledge as a parent and her self-esteem had improved." Peterson further stated that Heather had grown and changed in positive ways, which Heather attributed in part to her work in therapy, among other things. Peterson noted that Heather was still married to the same person she was at the time of the first evaluation, her living situation was stable, and she had stable employment. Peterson further noted that Heather has another child living with her, K.R.'s younger sister, whom she has coparented with the child's father in a stable arrangement and no one has notified her of any issues or bad parenting on Heather's part in regard to that child. She testified that if a parent is competently parenting one child, it indicates the parent should be able to competently parent another child.

Following trial, the court entered an order finding that terminating the guardianship would be a detriment to K.R.'s welfare. It further found:

> [Heather] may certainly place herself in a position in the future to regain custody of [K.R.] after a period of regular visitation and re-establishing a parental relationship. Given the sensitive nature of this case and [K.R.'s] current mental state, this court will entertain reinstating visits, ordering family therapy and terminating the guardianship *if and when* it is recommended by [K.R.'s] therapist. However, until that occurs, the guardianship established on October 28, 2014 shall remain in full force and affect.

(Emphasis in original.)

## ASSIGNMENTS OF ERROR

Heather assigns that the trial court erred in (1) failing to terminate the guardianship over K.R.; (2) failing to reinstate

- 722 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

visitation between Heather and K.R.; and (3) improperly delegating authority to K.R.'s therapist regarding "visitation, termination of the guardianship, and family therapy."

## STANDARD OF REVIEW

[1-3] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. See, *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004); *In re Guardianship of Elizabeth H.*, 17 Neb. App. 752, 771 N.W.2d 185 (2009). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Guardianship of D.J., supra*; *In re Guardianship of Elizabeth H., supra*. An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the lower court where competent evidence supports those findings. *In re Guardianship of Elizabeth H., supra*.

## ANALYSIS

*Motion to Terminate Guardianship.*

Heather first assigns that the trial court erred in failing to terminate the guardianship over K.R. Specifically, Heather argues that appellees failed to meet their burden of proving by clear and convincing evidence that Heather either is unfit or has forfeited her right to custody.

[4-6] It is well established that there are two competing principles in the area of child custody jurisprudence: the parental preference principle and the best interests of the child principle. See *In re Guardianship of D.J., supra*. Courts have long considered the best interests of the child to be of paramount concern in child custody disputes. See *id*. Yet, "the principle of parental preference provides that a court 'may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the

- 723 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

[parent-child] relationship or has forfeited that right.'" *Id*. at 244, 682 N.W.2d at 243 (quoting *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996), *disapproved on other grounds, In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017)).

[7-10] In weighing these two principles, the Nebraska Supreme Court has held that in guardianship termination proceedings involving a biological or adoptive parent, "the parental preference principle serves to establish a rebuttable presumption that the best interests of a child are served by reuniting the child with his or her parent." *In re Guardianship of D.J.*, 268 Neb. at 244, 682 N.W.2d at 243. Under this principle, a parent's natural right to the custody of his or her child "trumps the interest of strangers to the parent-child relationship and the preferences of the child." *Id*. at 244, 682 N.W.2d at 243-44. Therefore, for a court to deny a parent the custody of his or her minor child, it must be affirmatively shown that such parent is unfit to perform parental duties or that he or she has forfeited that right. See *id*. Thus,

> an individual who opposes the termination of a guardianship bears the burden of proving by clear and convincing evidence that the biological or adoptive parent either is unfit or has forfeited his or her right to custody. Absent such proof, the constitutional dimensions of the relationship between parent and child require termination of the guardianship and reunification with the parent.

*In re Guardianship of D.J.*, 268 Neb. 239, 249, 682 N.W.2d 238, 246 (2004).

[11,12] However, the Nebraska Supreme Court has stated that "[w]hile preference must be given to a biological or adoptive parent's superior right to custody where the parent is not unfit and has not forfeited his or her parental rights, a court also considers the child's best interests in making its custody determination." *Windham v. Griffin*, 295 Neb. 279, 290, 887 N.W.2d 710, 718 (2016), citing *In re Guardianship of D.J., supra*. The court in *Windham* further held:

- 724 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

> We continue to adhere to the view that the parental pref-
> erence doctrine, by definition, is a preference, and it
> will be applied to a child custody determination unless
> it is shown that the lawful parent is unfit or has forfeited
> his or her superior right or the preference is negated
> by a demonstration that the best interests of the child
> lie elsewhere.

295 Neb. at 288, 887 N.W.2d at 717, citing *In re Guardianship
of D.J., supra*. The court in *Windham* noted that there have
been rare instances where courts have determined that the best
interests of the child defeated the lawful parent's preference.
The court in *Windham* referred to *Gorman v. Gorman*, 400 So.
2d 75 (Fla. App. 1981), as one such case. In *Gorman*, the trial
court found both the biological father and the ex-stepmother
to be fit and proper parents, but awarded custody of the child
to the ex-stepmother. On appeal, the appellate court affirmed
the trial court's determination that it was in the child's best
interests for the ex-stepmother to have custody rather than the
lawful parent.

We determine that like *Gorman*, the present case is one of
those rare cases where the best interests of the child defeats the
parental preference principle.

The evidence showed that Heather had been convicted of
child abuse for failing to protect K.R. and had been sentenced
only 3 months earlier at the time she filed her motion to ter-
minate the guardianship. Cynthia testified that K.R. was still
dealing with symptoms of the abuse, such as refusing to go
into a bathroom by herself, "wet[ting] her pants" at school,
and having nightmares. Cynthia testified that K.R.'s symptoms
increased when she learned of Heather's motion to dismiss the
guardianship, which included K.R.'s hurting herself.

Cattau, who had been K.R.'s therapist since January 2015,
testified about the effects of the abuse on K.R. and how
she was dealing with the trauma. Cattau testified that K.R.
informed her she had told Heather about the sexual abuse and
that Heather did not believe her and blamed her for any sexual

- 725 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

activity with Seth. Cattau testified that K.R. is still working through the guilt and blame that she feels from Heather. K.R. also told Cattau that she does not believe Heather cares about her or loves her. Cattau agreed with Cynthia that K.R. had been having additional emotional outbursts, such as hitting herself, because of these proceedings. K.R. has also indicated that she has suffered more abuse than what she has disclosed so far. She stated that it was imperative that K.R.'s emotional state and emotional well-being be taken into consideration. Cattau testified that she did not support termination of the guardianship and was not in support of any type of visitation between Heather and K.R. at the time of trial.

Based on the evidence presented, K.R. is still dealing with the abuse she endured and the role that Heather played in allowing the abuse to occur. As previously stated, at the time of trial, Heather had been convicted of child abuse for failing to protect K.R. and Heather was serving her sentence of 18 months' probation. We conclude that based on the circumstances in this case, the parental preference principle is negated by a demonstration that K.R.'s best interests will be served by keeping the guardianship in place. Therefore, the trial court did not err in failing to terminate the guardianship over K.R.

*Motion to Reinstate Visitation.*

Heather also assigns that the trial court erred in failing to reinstate visitation between her and K.R. At the time of trial, Cattau testified that she did not believe any type of visitation should take place between Heather and K.R. She also testified about what she believed needed to happen before visitations could take place. We find no error in the court's refusal to reinstate visitation.

*Delegation of Decisions to Therapist.*

Heather assigns that the trial court erred in improperly delegating decisions regarding visitation, family therapy, and

- 726 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE GUARDIANSHIP OF K.R.
Cite as 26 Neb. App. 713

the guardianship to K.R.'s therapist. Her assignment of error is based on the court's statement that "[g]iven the sensitive nature of this case and [K.R.'s] current mental state, this court will entertain reinstating visits, ordering family therapy and terminating the guardianship[,] *if and when* it is recommended by [K.R.'s] therapist." (Emphasis in original.) Heather argues that allowing Cattau to make these decisions was an improper delegation of the court's authority. We disagree.

The trial court did not delegate decisions to Cattau, but, rather, stated that it would not consider reinstating visits, ordering family therapy, and terminating the guardianship until such time as these things were recommended by K.R.'s therapist. The court retained the authority to make these decisions and only stated that it would need to hear from the therapist that K.R. was ready for such steps to be taken. Heather's final assignment of error is without merit.

## CONCLUSION

We conclude that the county court did not err in denying Heather's motion to terminate the guardianship over K.R., did not err in denying her motion to reinstate visitation, and did not improperly delegate any decisions to K.R.'s therapist. Accordingly, the order of the county court is affirmed.

Affirmed.