Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/01/2020 08:08 AM CST

Kirsten W. Kelly, appellee, v.
Gary B. Kelly, appellant.
___ N.W.2d ___

Filed November 24, 2020.    No. A-20-084.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Visitation.** Placing in a psychologist the authority to effectively determine visitation, and to control the extent and time of such visitation, is not the intent of the law and is an unlawful delegation of the trial court's duty.
4. **Child Custody: Visitation: Stipulations.** It is the responsibility of the trial court to determine questions related to custody and parenting time according to the best interests of the minor children. This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties.
5. **Visitation: Appeal and Error.** Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
6. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

7. **Child Support: Rules of the Supreme Court.** The Nebraska Child Support Guidelines recognize other incidents of support that are wholly or partly outside of the monthly installment, including the expenses specified in Neb. Rev. Stat. § 42-364.17 (Reissue 2016).

8. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

9. **Child Support: Taxation: Presumptions.** In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child.

10. **Child Support: Taxation: Waiver.** A court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires.

11. **Divorce: Property Division: Alimony.** In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.

12. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

13. **Alimony.** Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.

14. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed in part as modified, and in part vacated.

Mark A. Steele, of Steele Law Office, for appellant.

John H. Sohl for appellee.

Moore, Bishop, and Welch, Judges.

Bishop, Judge.

## I. INTRODUCTION

Gary B. Kelly appeals from the decree entered by the Saunders County District Court dissolving his marriage to Kirsten W. Kelly, awarding legal and physical custody of the parties' three children to Kirsten, and ordering Gary to pay child support and alimony. Gary challenges decisions made related to the parenting plan, private school tuition, extracurricular and other expenses, tax exemptions, equalization of the marital estate, alimony, and attorney fees. We affirm in part as modified, and in part vacate.

## II. BACKGROUND

Gary and Kirsten married in September 2007, and three children were born during the marriage: the first in 2008, the second in 2009, and the third in 2010. Kirsten separated from Gary in November 2018 and moved with the minor children out of the marital home. Kirsten then sought and obtained a protection order against Gary based on allegations of domestic abuse by Gary against her and the children for which he received a criminal citation and was sentenced to probation.

Kirsten filed for divorce shortly after the separation in November 2018. On January 14, 2019, the district court granted Kirsten's motion for temporary legal and physical custody. The court restricted Gary from contacting the children until the children met with a mental health professional and that professional gave a report and recommendation to the court. The temporary order required Gary to pay $2,109 per month in child support. The temporary order also required Gary to pay $3,606 per month in spousal support, to be reduced to $1,708 per month beginning in February. Gary was also responsible

for two-thirds of daycare and health care expenses incurred for the children. The court entered a second temporary order on February 5 concerning Gary and Kirsten's agreement to the sale of the marital residence. On September 30, the court modified the first temporary order to allow Gary to have supervised therapeutic sessions with the oldest child.

Trial took place on October 24 and 25, 2019. In the analysis section below, we will discuss the trial evidence relevant to the errors assigned. A decree dissolving the marriage was entered by the district court on November 12. Pursuant to the decree and an order nunc pro tunc entered shortly thereafter on November 18, and another nunc pro tunc order entered on February 3, 2020, the district court awarded Kirsten legal and physical custody of the minor children, noting "there [was] credible evidence that [Gary] has perpetuated child abuse and domestic intimate partner abuse." The court concluded that Kirsten should have sole legal and physical custody, which was "in the best interest of the minor children."

The decree established certain provisions in the parenting plan for Gary, which consists of the following four phases:

> PHASE 1 - THERAPUTIC VISITS: [Gary] shall have family therapy with the minor children twice a month (every-other-week). The therapeutic session shall be conducted by a licensed mental health practitioner designated as the therapist for the child. Family therapy sessions shall commence immediately between [the oldest child] and [Gary]. Family therapy sessions between [Gary] and the other two minor children shall commence upon the recommendation of the minor children's therapist. [Kirsten] shall sign all necessary releases to ensure that [Gary] can communicate with the children's therapist(s).

> PHASE 2 - SUPERVISED VISITS: At the recommendation of each child's treating therapist, visitation shall move to supervised visits. These shall occur every Wednesday evening from 3:30 (after school) until 7:00 p.m. and every-other Saturday from 1:00 p.m. until

5:00 p.m. Visits shall be supervised by [one of Gary's adult children from a prior marriage], or another third party as agreed upon by the parties, or a professional agency at the expense of [Gary]. [Gary] shall not consume alcohol immediately prior to or during the visitation. [Gary] shall not physically discipline the minor children. Provided there are no safety concerns, visitation shall move to Phase 3 after six months.

PHASE 3 - UNSUPERVISED VISITS: At the recommendation of each child's treating therapist, visitation shall move to unsupervised visits. These shall occur every Wednesday evening from 3:30 (after school) until 7:00 p.m. and every-other Saturday from 1:00 p.m. until 5:00 p.m. [Gary] shall not consume alcohol immediately prior to or during the visitation. [Gary] shall not physically discipline the minor children. Provided there are no safety concerns, visitation shall move to Phase 4 after six months.

PHASE 4 - ONGOING PARENTING PLAN: At the recommendation of each child's treating therapist, visitation shall occur as follows:

[Gary] shall a [sic] have parenting time every Wednesday evening from 3:30 p.m. until 7:30 p.m. [Gary] shall have every other weekend from Friday at 3:30 p.m. until Sunday at 5:00 p.m.

Phase 4 of the parenting plan also included a holiday parenting time schedule.

Relevant to this appeal, the decree also required Gary to pay $1,980 per month in child support for three children. The district court divided expenses such that Gary would be responsible for 70 percent of childcare and extracurricular expenses incurred on behalf of the children and 50 percent of the cost of tuition for the children to continue attending private school. Gary was also ordered to pay other miscellaneous expenses related to the children. The decree gave Kirsten the sole right to claim the children for state and federal income

tax purposes. As part of the division of marital property, the court ordered Gary to pay Kirsten an equalization payment of $15,841. The decree additionally required Gary to pay Kirsten $500 per month in alimony for 5 years and awarded Kirsten $8,000 in attorney fees.

Following the entry of the decree, Gary filed a motion for new trial and/or reconsideration. The district court denied his motion on January 9, 2020. Gary then timely filed this appeal.

## III. ASSIGNMENTS OF ERROR

Gary claims the district court erred by (1) formulating an unreasonably restrictive phased parenting plan, (2) requiring Gary to pay 50 percent of private school tuition for the children, (3) requiring Gary to pay 70 percent of the costs for the children's extracurricular activities, (4) allocating solely to Kirsten the right to claim the children for state and federal income tax purposes, (5) ordering Gary to pay Kirsten a property equalization payment of $15,841, (6) ordering Gary to pay Kirsten alimony of $500 per month for 5 years, and (7) ordering Gary to pay Kirsten $8,000 for attorney fees.

## IV. STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. Parenting Plan

The district court ordered the implementation of the phased parenting plan described above. Based on the evidence

presented at trial, the district court found the phased parenting plan to be in the best interests of the minor children. In its decree, the court stated that it found "by a preponderance of evidence that there is credible evidence that [Gary] perpetuated child abuse and domestic intimate partner abuse" and "limitation on parenting time between [Gary] and the minor children must be implemented to provide for their safety and well-being." Notably, Neb. Rev. Stat. § 43-2932(1) (Reissue 2016) provides that when there is evidence of child abuse or domestic intimate partner abuse, limitations on parenting time may be imposed that are "reasonably calculated to protect the child or child's parent from harm." There is considerable evidence in the record related to the inappropriate, harmful behaviors in which Gary engaged with either the children and/or Kirsten. It is unnecessary to detail those instances here given the limited nature of Gary's assigned error.

Gary does not argue that the phased approach to parenting time is by itself problematic. Rather, he contends that the "phases required the approval and recommendation for each phase by the children's therapist and last for a period of six months between phases" and that this "restrictive parenting time . . . was arbitrary and unsupported by the evidence, and unjustifiably interferes with his parenting relationship with the minor children." Brief for appellant at 13. He asserts that he has "taken the necessary steps to modify his behaviors and testified to his ability to interact successfully with the minor children." *Id*. at 15. He further contends that "the duration of any phases should not be for definitive times; but instead monitored and moved forward under direct therapist supervision and recommendations." *Id*.

We understand Gary's arguments as challenging the specific 6-month duration of the parenting phases and not allowing for greater flexibility; he suggests a faster progression through each phase should be permitted if recommended by the therapist, based upon the parenting plan being "closely monitored and supervised for cooperation and progress." *Id*. We do not

read the parenting plan to be quite as restrictive as Gary suggests, at least as to Phase 2 through Phase 4.

[3,4] We begin our analysis with the understanding that while it is not an abuse of discretion for a trial court to order counseling, "placing in a psychologist the authority to effectively determine visitation, and to control the extent and time of such visitation, is not the intent of the law and is an unlawful delegation of the trial court's duty." *Deacon v. Deacon*, 207 Neb. 193, 200, 297 N.W.2d 757, 762 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). It is the responsibility of the trial court to determine questions related to custody and parenting time according to the best interests of the minor children. See *id.* This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties. *Id.*

Therefore, in this case, it was necessary for the district court to provide a specified duration of time for each parenting phase rather than leaving the transition from phase to phase solely at the discretion of a therapist. Such a delegation of authority from the district court to each child's therapist would have constituted error whether reviewed for plain error or an abuse of discretion. See, *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999) (order that father's parenting time would be increased at discretion of family therapist was wrongful abdication of trial court's duty and constituted plain error; plain error affects substantial right and is of such nature that to leave it uncorrected would cause miscarriage of justice or result in damage to integrity, reputation, and fairness of judicial process); *Deacon v. Deacon, supra* (not abuse of discretion to order counseling, but portion of order effectively placing authority in psychologist to determine visitation and control extent and time of such visitation was unlawful delegation of trial court's duty). But see *In re Guardianship of K.R.*, 26 Neb. App. 713, 923 N.W.2d 435 (2018) (trial court did not improperly delegate decisions regarding visitation, family therapy,

and guardianship to child's therapist where trial court expressly reserved authority to make those decisions if and when child's therapist stated child was ready for such steps).

Accordingly, as for Phase 2 through Phase 4, the district court did not abuse its discretion in ordering fixed durations before parenting time had to transition to the next phase, in the absence of safety concerns. It was necessary for the court to impose limits on each phase so that the transitions were not left completely at the discretion of a therapist. Further, as to Gary's argument about flexibility to allow for faster progression through each phase if recommended by the therapist, we read the parenting plan to provide that flexibility. Gary's supervised parenting time could transition to unsupervised parenting time at the recommendation of each child's therapist, which could occur before 6 months on such a recommendation. But unless there were safety concerns, the supervised parenting time had to transition to unsupervised parenting time after 6 months. The same applies to the transition from unsupervised parenting time to the ongoing parenting plan. Implicit in the plan is that if a child's therapist determined that safety concerns still existed at the 6-month mark for the next transition, the therapist could elect to not recommend moving to the next parenting phase, and if Gary disagreed with that decision, the matter would have to return to the district court for a determination as to whether an extension of time was warranted under the parenting phase at issue. Therefore, Phase 2 through Phase 4 provided flexibility for faster progression upon the recommendation of each child's therapist, but also limited each phase to 6 months, barring safety concerns, so that the court, not the therapist, was determining the maximum duration of those phases.

However, while not specifically assigned as error by Gary, we do find plain error regarding the lack of a specified duration for therapeutic visits in Phase 1, as well as the lack of a specified time for when Gary would commence family therapy sessions with the two younger children. Unlike the

other phases, the court delegated to each child's therapist the discretion to determine when Gary could move from therapeutic visits in Phase 1 to supervised visits in Phase 2. And as to the two younger children, the family therapy sessions were to commence "upon the recommendation of the minor children's therapist." As discussed above, this constitutes an improper delegation of authority from the district court to each child's therapist. See *Hajenga v. Hajenga, supra* (order that father's parenting time would be increased at discretion of family therapist was wrongful abdication of trial court's duty and constituted plain error). To eliminate this improper delegation of authority to each child's therapist, and considering the district court's determination that 6-month blocks were appropriate for the other transition phases, we modify the parenting plan to provide that transition to "Phase 2 - SUPERVISED VISITS" shall take place after 6 months of the therapeutic visits described in Phase 1, provided there are no safety concerns. Further, to the extent family therapy has not commenced with the two younger children, that should commence immediately, unless there are safety concerns. If safety concerns exist, given the amount of time that has already lapsed during the pendency of this appeal, the matter will need to be scheduled before the district court for further consideration of when such family therapy shall commence for the two younger children.

[5,6] With regard to the district court's determination of 6-month transitional phases rather than phases of shorter duration, we cannot say the court abused its discretion, particularly since the parenting plan did provide the flexibility for faster progression than 6 months if recommended by a child's therapist. Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Bornhorst v. Bornhorst*, 28 Neb. App. 182, 941 N.W.2d 769 (2020). When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard

and observed the witnesses and accepted one version of the facts rather than another. *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017).

Gary's arguments focus largely on efforts he has been making to be a better parent. And while such efforts are to be commended, the district court also had to consider what was in the best interests of the children. It is evident that the court put in place a transitional schedule that will give the children sufficient time and space to heal from the past traumatic experiences caused by Gary's abusive behaviors toward the children and Kirsten. As just one example of the need for caution in moving forward with parenting time, there was evidence that as a result of Gary's interactions with one child, the child went to Kirsten crying and told her "he can't take it anymore, he just wants to kill himself." Given the nature of the evidence underlying the district court's findings related to child abuse and domestic intimate partner abuse, we cannot say a graduated parenting time schedule like the one before us, as modified, was an abuse of discretion.

## 2. EXPENSES IN ADDITION TO
## MONTHLY CHILD SUPPORT

In calculating its order for child support ($1,980 per month) by using a basic net income and support calculation, worksheet 1, the district court determined Gary's gross monthly income to be $12,048.25 and Kirsten's gross monthly income to be $5,000. See Neb. Ct. R. ch. 4, art. 2, worksheet 1 (rev. 2016). Gary claims the district court abused its discretion in ordering Gary to be responsible for 50 percent of the cost of private school tuition for the minor children in addition to the order to pay $1,980 per month in child support. Gary also contends the district court abused its discretion in ordering him to be responsible for 70 percent of all extracurricular expenses incurred on behalf of the minor children upon which the parties mutually agree in advance. Gary also takes issue with the court's order requiring the parties to equally share "the cost of

school lunches (purchased from the school), required school supplies, haircuts, and items of clothing the parties expect the children to wear at both residences, i.e., winter coats, hats, mittens, winter boots, backpacks, and tennis shoes."

### (a) Applicable Law

Prior to the existence of the Nebraska Child Support Guidelines, Nebraska statutory law addressed various expenses to be considered in support orders: "A support order, decree, or judgment may include the providing of necessary shelter, food, clothing, care, medical support as defined in section 43-412, medical attention, expenses of confinement, education expenses, funeral expenses, and any other expenses the court may deem reasonable and necessary." See Neb. Rev. Stat. § 42-369(3) (Cum. Supp. 2018).

In 1984, Congress required the states to develop guidelines for child support awards; noncompliance would result in the loss of federal funds for various programs. See *Schmitt v. Schmitt*, 239 Neb. 632, 477 N.W.2d 563 (1991). Nebraska complied in 1985 with the passage of 1985 Neb. Laws, L.B. 7, § 18, 2d Spec. Sess. See Neb. Rev. Stat. § 42-364.16 (Reissue 2016) (requires Nebraska Supreme Court to create guidelines that serve as rebuttable presumption in setting child support obligations). See, also, *Schmitt v. Schmitt, supra*. The Nebraska Child Support Guidelines subsequently became operative October 1, 1987. See *Schmitt v. Schmitt, supra*.

[7] Then, in 2008, the Legislature passed 2008 Neb. Laws, L.B. 1014, § 33, codified at Neb. Rev. Stat. § 42-364.17 (Reissue 2016), which specifically sets forth certain categories of expenses that could be considered in determining parents' financial responsibilities related to their children; it provides as follows:

A decree of dissolution, legal separation, or order establishing paternity shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical

reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations.

The Nebraska Supreme Court has clarified that § 42-364.17 provides categories of expenses incurred by a child which can be ordered by a trial court *in addition* to the monthly child support calculation determined under the guidelines. "The common meaning of 'support' clearly includes all of the incidents of a child's needs." *Caniglia v. Caniglia*, 285 Neb. 930, 934, 830 N.W.2d 207, 211 (2013). One incident of support is the regular monthly payment established under the Nebraska Child Support Guidelines. See *Caniglia v. Caniglia, supra*. "But the guidelines recognize other incidents of 'support' that are wholly or partly outside of the monthly installment." *Caniglia v. Caniglia*, 285 Neb. at 934, 830 N.W.2d at 211. "The expenses stated in § 42-364.17—including, among others, extracurricular, education, and other extraordinary expenses— merely represent other incidents of 'support' to be addressed in a dissolution decree." *Caniglia v. Caniglia*, 285 Neb. at 934, 830 N.W.2d at 211. Thus, a district court has the authority to order the categories of expenses specified in § 42-364.17 in addition to the monthly child support obligation calculated under the guidelines.

Notably, as applicable here, § 42-364.17 refers specifically to extracurricular, education, and other "extraordinary" expenses that may be considered in addition to the monthly child support obligation, while § 42-369(3) refers more generally to "necessary shelter, food, clothing, care," and education expenses, and "any other expenses the court may deem reasonable and necessary." Under § 42-364.17, any expense beyond "reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, [and] education" would have to qualify as "extraordinary." Whereas, under § 42-369(3), expenses may include necessary food, clothing, and care, as well as any other expenses deemed "reasonable and necessary" by the court. The older

statute certainly contemplates a very broad range of expenses associated with caring for a child, while the newer statute has narrowed the types of expenses that may coincide with a calculation of child support obligations.

[8] To reconcile the two statutes, we note that child support statutes should be read in conjunction with the Nebraska Child Support Guidelines. See *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993). Also, components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible. *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020). Because the broader, more general terms contained in § 42-369(3) preceded the adoption of the guidelines and the passage of § 42-364.17, we construe the guidelines and § 42-364.17 to control what categories of expenses can be ordered in addition to the monthly child support obligation determined under the guidelines. Since there were no mandatory child support guidelines in existence until the passage of the guidelines in 1987, the broader language of § 42-369(3) essentially provided for types of expenses that could be considered when determining support for children, including basic necessities such as shelter, food, and clothing. However, the adoption of the guidelines necessarily incorporated basic necessities such as shelter, food, and clothing, and the passage of § 42-364.17 further delineated specific expenses that could be ordered in addition to those basic necessities now incorporated into the guidelines. To construe § 42-369(3) to require a parent to pay for basic necessities such as shelter, food, and clothing in addition to a monthly child support obligation which has been calculated using the basic net income and support calculation, worksheet 1, would make inexplicable what the monthly child support was otherwise intended to cover in terms of a child's needs.

However, an order requiring a parent to contribute to a child's clothing expenses, or other reasonable and necessary

direct expenditures, may be appropriate in joint physical custody situations. In those cases, the determination of each parent's monthly child support obligation is significantly lower when using the joint physical custody child support calculation, worksheet 3, due to the more equal sharing of parenting time between the parents. See Neb. Ct. R. ch. 4, art. 2, worksheet 3 (rev. 2007). Neb. Ct. R. § 4-212 (rev. 2011), related to joint physical custody, provides in relevant part: "If child support is determined under this paragraph, all reasonable and necessary direct expenditures made solely for the child(ren) such as clothing and extracurricular activities shall be allocated between the parents, but shall not exceed the proportion of the obligor's parental contributions . . . ." Therefore, in addition to the monthly child support obligation calculated for joint physical custody, a trial court may apportion between the parents a child's clothing and other reasonable and necessary direct expenditures.

With these legal principles in mind, we now consider the expenses Gary was ordered to pay in addition to his monthly child support obligation which was calculated using the basic net income and support calculation, worksheet 1, rather than the joint physical custody child support calculation, worksheet 3.

### (b) Private School Tuition

During the course of the marriage, Gary and Kirsten enrolled the children in a private school. Kirsten testified that she had continued the children's enrollment in the same private school after the parties separated and during the dissolution proceedings. Gary testified that he objected to having the children attend private school, but had allowed the children's attendance during the marriage.

Gary suggests the district court had the discretionary authority to provide a support order to include educational expenses pursuant to § 42-369(3); however, he claims this constitutes a deviation from the Nebraska Child Support

Guidelines. In response, Kirsten also directs us to § 42-364.17. Gary claims that because Kirsten "unilaterally [chose] to continue to enroll the minor children in a private school" and "offered [no evidence] regarding the minor children['s] need for such an education, or that it had any beneficial [e]ffect or consequences," then the cost of the children's tuition should be Kirsten's responsibility alone. Brief for appellant at 18. He therefore contends that making him responsible for 50 percent of the cost of private school tuition for the children was an abuse of discretion.

Education is one of the expenses specifically referenced in § 42-364.17, and it therefore represents a type of support the district court may award in addition to the monthly child support obligation. See *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013). Private school education has been recognized as an expense that may be allocated separately from a monthly child support award. See *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018) (affirming district court's order directing father to pay school tuition for children's private school education).

In light of the evidence that the children have attended the same private school throughout the marriage and the dissolution process, we cannot say the district court abused its discretion in ordering Gary to be responsible for 50 percent of the children's private school tuition costs. Although Gary is paying $1,980 per month in child support and $500 per month in alimony ($2,480 per month total support), his gross monthly income of $12,048.25 is still much greater than Kirsten's gross monthly income of $5,000. Even after adjusting for Gary's outgoing support obligations and Kirsten's incoming support amounts, Gary can afford to contribute equally with Kirsten to maintain their children in the education environments which were established during the marriage. Maintaining stability and continuity in the children's educational routine is certainly in their best interests. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019) (relevant

considerations of child's best interests include stability in child's routine).

### (c) Extracurricular Expenses

We likewise cannot say that the district court abused its discretion by making Gary responsible for 70 percent of the extracurricular expenses incurred on behalf of the children that the parties mutually agree upon in advance. As noted previously, extracurricular expenses are specifically referenced in § 42-364.17; this is another type of support that may be awarded in addition to the monthly payment established by the child support guidelines. See *Caniglia v. Caniglia, supra*. Notably, the district court requires the sharing of only those extracurricular expenses that the parties have agreed to in advance, although the court also noted that consent should not be unreasonably withheld. This provision appears to encourage both parents to participate in making decisions about such activities for their children. Further, with the contributions of both parents to the costs associated with such activities, they will likely be more mutually supportive of their children's involvement in those activities. We cannot say that the district court abused its discretion in its allocation of these expenses between the parties in this manner.

### (d) Other Miscellaneous Expenses

With respect to the part of the order requiring Gary to be responsible for half of "the cost of school lunches (purchased from the school), required school supplies, haircuts, and items of clothing the parties expect the children to wear at both residences, i.e., winter coats, hats, mittens, winter boots, backpacks, and tennis shoes," we find the district court abused its discretion.

As discussed above, § 42-364.17 sets forth those expenses which a parent may be ordered to pay in addition to his or her monthly child support obligation. These include "reasonable and necessary medical, dental, and eye care, medical

reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child." While it is conceivable that school lunches and school supplies might qualify as an "education" expense, we conclude that such a broad reading is not warranted in the present matter. With a child support award of $1,980 per month, these items can be adequately covered and seem better characterized as basic necessities covered by the monthly child support obligation.

As for the order's remaining items, haircuts and clothing, the only category under which they could possibly qualify under § 42-364.17 would be "extraordinary expenses." We conclude that such expenses fall within the basic necessities intended to be covered by a monthly child support obligation calculated using the basic net income and support calculation, worksheet 1, and do not rise to the level of "extraordinary expenses."

The district court abused its discretion in ordering Gary to pay for these expenses, and we therefore vacate this portion of the decree.

### 3. Tax Dependency Exemptions

Gary claims on appeal that the district court abused its discretion in awarding Kirsten the sole right to claim the children for state and federal income tax purposes.

For purposes of the district court's child support calculation, Gary's gross income was calculated to be $12,048.25 per month and Kirsten's was calculated to be $5,000 per month. The district court ordered Gary to pay additional expenses described previously in addition to the monthly child support sum of $1,980.

Gary asserts that because he "is paying [his] proportionate share of direct living expenses for the care of the minor children through his child support obligation[,] [h]e should receive some benefit for this obligation in the form of a tax exemption." Brief for appellant at 20-21. He further claims his marginal tax rate would be "detrimentally unfair to [Kirsten's]

marginal tax rate, claiming the tax dependency credits for all three minor children." *Id.* at 21.

[9,10] A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Id.* But a court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires. *Id.*

Although Gary claims that the district courts "have routinely equally divided the tax dependency exemptions between the parents," brief for appellant at 21, we note that a departure from this routine does not necessarily equate to an abuse of discretion. The considerations of the district court included the totality of the facts and circumstances of the parties and were not constrained to comparisons of income and allocation of expenses. We cannot say the district court abused its discretion in granting Kirsten the sole right to claim the minor children for state and federal income tax purposes.

## 4. EQUALIZATION PAYMENT

Gary does not disagree with "the identification of marital assets and liabilities, nor the valuations determined by the [district court]." Brief for appellant at 22. However, he contends the district court abused its discretion in determining he owed Kirsten a payment of $15,841 to equalize the marital estate. He asserts the property division was not supported by the evidence related to the sale of the marital residence, as the division of the marital residence and all liens and encumbrances against it had been divided prior to trial and were erroneously factored into the district court's calculations. We agree that the evidence supports Gary's argument.

While the dissolution action was pending, Kirsten motioned the district court to order the sale of the marital residence.

The district court granted this order. The closing on the sale occurred on May 2, 2019; trial took place in October. At the time of closing, Gary's support obligations under the January 14 temporary order were in arrears; he owed $5,066.14 in child support and $9,819.09 in spousal support (total owed of $14,885.23).

According to the closing statement for the marital home received into evidence, the sale price was $196,500. The closing statement reflects that the mortgage and home equity line of credit encumbering the marital residence, as well as all other fees associated with the closing, were deducted from the sale proceeds. Also, as part of the closing costs, the combined amount of Gary's outstanding support obligations ($14,885.23) was deducted for distribution to Kirsten. The remaining net proceeds of the sale amounted to $14,954.71 and were placed into escrow. We note that the net sale proceeds would have totaled $29,839.94 but for the payment made to pay off Gary's outstanding support obligations. Ordinarily, such net proceeds would have been split in half, resulting in the receipt by each party of $14,919.97. However, instead of receiving his share of the net profit, Gary's share was applied to his outstanding support obligations of $14,885.23. Gary contends that the remaining balance of $14,954.71 constituted Kirsten's one-half share and that this amount was distributed to Kirsten. The record is unclear as to whether the $14,954.71 was still held in escrow at the time of trial or whether those funds had actually been distributed to Kirsten as Gary indicates.

The district court's calculation error appears to stem from Kirsten's assets and liabilities spreadsheet, offered and received as exhibit 11. The district court adopted the values, the division, and the equalization amount of $15,841 as set forth on that exhibit. However, exhibit 11 reflects both parties receiving $22,791.59 in equity from the home, which is not supported by the closing statement. Further, exhibit 11 credits Kirsten's equity in the home with the amounts owed by Gary in child and spousal support described previously. However, as Gary

points out, the real estate closing document shows that these outstanding obligations were deducted from his share of the house sale proceeds at the time of closing. Kirsten's only response to Gary's argument is that she divided the house proceeds equally on her spreadsheet and deducted the delinquent support "by showing it as a negative figure" to make sure she would not be paying for half of Gary's outstanding support obligations. Brief for appellee at 16. She does not explain why giving her the delinquent support credits on her spreadsheet was appropriate given Gary's share of the net proceeds from the house sale had already satisfied those delinquencies. Nor does she otherwise challenge Gary's explanation regarding the application of his share of the home equity to those outstanding support obligations.

After considering the evidence in the record, we agree with Gary that the remaining net proceeds of $14,954.71 from the sale which were placed into escrow represented Kirsten's share of the equity in the marital home and that the amount of $14,885.23 paid to Kirsten in satisfaction of his support obligations represented Gary's share of the equity. These combined amounts represent the remaining equity in the home following the deduction of all related liens, costs, and fees from the sale price of the marital home as evidenced by the closing statement. Gary, instead of receiving his share of the net proceeds, had his share paid to Kirsten to satisfy his delinquent support obligations. The amounts of Gary's satisfied obligations should not have been included on the assets and liabilities spreadsheet, and the equalization calculation should be modified accordingly.

Before setting forth our modified calculation of the marital estate, we note that our modification assumes the net proceeds of $14,954.71 from the sale of the marital home were distributed entirely to Kirsten. As noted previously, the record is unclear whether those funds were distributed to Kirsten or whether they are still in escrow. If the latter, those funds should be released entirely to Kirsten.

Using the asset and liability values set forth on exhibit 11, as now modified to reflect each party's share of the net proceeds from the sale of the home, we have calculated the property equalization as follows:

|                                    | **Kirsten**    | **Gary**       |
| ---------------------------------- | -------------- | -------------- |
| Net house sale proceeds            | $14,954.71     | $14,885.23     |
| (Gary's share used to              |                |                |
| pay outstanding support)           |                |                |
| Other assets                       | $    475.78    | $40,304.75     |
| Total assets                       | $15,430.49     | $55,189.98     |
| Liabilities                        | [$13,202.01]   | [$36,234.19]   |
| Net marital estate                 | $ 2,228.48     | $18,955.79     |
| Equalization due to Kirsten        | $ 8,364.00     | [$ 8,364.00]   |
| Equalized marital estate           | $10,592.48     | $10,591.79     |

Accordingly, we modify the district court's decree to reflect that Gary's property equalization judgment owed to Kirsten is $8,364 rather than $15,841.

### 5. Alimony

Gary argues on appeal that the district court abused its discretion in ordering him to pay $500 per month in alimony to Kirsten for 5 years.

As described previously, the district court, in calculating child support, determined Gary's monthly gross income at the time of trial to be $12,048.25 and Kirsten's monthly gross income to be $5,000. For the majority of the 12-year marriage until July 2016, Kirsten was employed. In July 2016, Kirsten and Gary agreed that Kirsten should quit her job to stay home with the minor children, forgoing her then-current yearly salary of $89,000. Thereafter, she was not employed again until March 2019.

Kirsten's expenses at the time of trial were approximately $4,543 per month; such expenses included $950 for rent, $1,084 for groceries, $300 for her car payment, $239 for vehicle gas, $200 for utilities, $945 for daycare for the children, and various other expenses including cell phone payments,

internet, renter's and vehicle insurance, and clothing and entertainment expenses for the children.

Gary neither testified as to nor provided a list of his monthly expenses. As described previously, he is obligated to pay $1,980 in child support to Kirsten as well as certain other expenses. He is also required to maintain health insurance through his employer for the benefit of the children, and his weekly payroll deduction for that insurance is $42.

The district court acknowledged the 12-year duration of the parties' marriage and the parties' three minor children. The court also identified Kirsten's decreased income compared to her previous employment, noting that "she is not in the same advanced position she was when her employment ended" and that "it will take her several years to obtain the same respective position." Drawing on these facts, the court ordered Gary to pay $500 per month in alimony to Kirsten for 5 years.

[11-13] In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. *Id.* In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.* Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

Gary argues that the evidence cannot justify an award of alimony to Kirsten, as "she has funds to pay for her[] and the

minor children['s] . . . normal maintenance and expenses."
Brief for appellant at 26. He further asserts that an award for
alimony is not warranted because "[n]o circumstances dictate
that [Kirsten] economically suffered during the marriage" and
Kirsten "was not left without assets or significant earning
capacity." *Id.* at 27. Gary also points out that his own income
is "directly reduce[d]" to the extent that factoring in Kirsten's
income and the other amounts Gary is required to pay to her,
"the net difference in the available earnings [is] not substan-
tially different." *Id.* at 27.

In addition to a significant disparity between each party's
employment income, Kirsten's present income amounts to only
approximately two-thirds of her previous income before she
ended her employment in July 2016 to take care of the chil-
dren, and it will take a number of years for Kirsten's level of
income to reach that same level again. While she builds up her
income toward its previous level, she will also be primarily
responsible for raising three children.

In light of the record before us regarding the parties' indi-
vidual circumstances, we cannot say the district court abused
its discretion in ordering Gary to pay $500 per month in ali-
mony to Kirsten for a period of 5 years.

### 6. ATTORNEY FEES

Gary claims the district court abused its discretion in order-
ing him to pay $8,000 in attorney fees to Kirsten.

According to an affidavit for attorney fees received into
evidence, Kirsten's attorney charged her at a rate of $300 per
hour. Prior to the conclusion of trial, the affidavit indicates
that Kirsten had incurred $16,849.09 in attorney fees and
expenses. This amount did not take into consideration the fees
associated with the trial. Kirsten requested that the district
court order Gary to pay for a portion, if not all, of her attor-
ney fees.

[14] It has been held that in awarding attorney fees in a dis-
solution action, a court shall consider the nature of the case,

the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Additionally, in dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). The award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019).

The district court ordered Gary to pay $8,000 toward Kirsten's attorney fees "[d]ue to the discrepancy in income between the parties . . . ." In light of the record before us with respect to the parties' circumstances as previously described, we cannot say the district court abused its discretion by ordering Gary to pay attorney fees to Kirsten.

## VI. CONCLUSION

The district court's decree is modified to reflect the changes to the parenting plan and the property equalization judgment as discussed above. The portion of the decree ordering Gary to pay certain expenses, as discussed above, is vacated. All other aspects of the decree are affirmed. Therefore, we affirm in part as modified, and in part vacate.

Affirmed in part as modified,
and in part vacated.