Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/06/2022 09:09 AM CDT

Franklin M., appellee, v.
Lauren C., appellant.

___ N.W.2d ___

Filed February 11, 2022.    No. S-21-442.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.

2. **Statutes.** Statutory interpretation presents a question of law.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

4. **Paternity: Child Custody.** In an action involving a child who was born out of wedlock and regarding whom there has been no prior judicial determination of custody, the issue before the court is not whether one parent should be allowed to relocate with the child, but instead which parent should be awarded permanent custody of the child as a matter of initial judicial determination. To resolve the disputed custody issue, rather than applying the threshold burden set forth in cases such as *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), the issue must be resolved on the basis of the fitness of the parents and the best interests of the child.

5. **Parent and Child: Evidence.** Where a preponderance, or the greater weight, of the evidence demonstrates that a parent has committed one of the listed actions in Neb. Rev. Stat. § 43-2932(1)(a) (Reissue 2016), the obligations of § 43-2932 are mandatory.

6. **Parent and Child: Proof.** To meet the requirement for "special written findings" under Neb. Rev. Stat. § 43-2932(3) (Reissue 2016), the court must at a minimum specifically state that it finds that the children and the other parent may be adequately protected from harm by the limits

the court has actually imposed in the parenting plan. The court's findings should also indicate that the court recognized that the burden on this issue was on the parent found to have committed the abuse. The court should further identify what limits it imposed in the parenting plan that it finds will provide the necessary protection.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Judgment vacated, and cause remanded for further proceedings.

Meghan E. Wolf, of Saathoff Law Group, P.C., L.L.O., for appellant.

Amber D. Ayres, of Morris Law, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## NATURE OF CASE

Lauren C. appeals the order of the district court for Douglas County which established the paternity of Franklin M. as to the parties' two children and decided issues regarding custody and child support. Lauren claims that the district court erred when it denied her request to remove the children to Iowa and when it failed to comply with statutory requirements to make special written findings regarding her allegations of domestic intimate partner abuse. We conclude that the district court erred as a matter of law when it applied an improper standard regarding removal. We also conclude that the court failed to make the special written findings required by statute after it found abuse to have occurred and that in the absence of such findings, the court erred when it awarded shared legal and physical custody to Franklin. We therefore vacate the order and remand the cause for further proceedings in which the district court should reconsider its custody decision by applying the proper standard and making the required findings.

## STATEMENT OF FACTS

In November 2019, Franklin filed a complaint for paternity, custody, and support in which he sought to establish custody and support for two children he had with Lauren. Franklin alleged that he and Lauren had never been married but that two children, one born in 2013 and one born in 2016, were born during the term of their relationship. Franklin alleged that he had acknowledged paternity of both children and that his name appeared on their birth certificates. Franklin requested that he be awarded temporary and permanent custody of the children and that child support be ordered in accordance with the guidelines.

In a separate motion seeking an ex parte order which was supported by an affidavit, Franklin alleged that in January 2018, he and Lauren had agreed to a parenting time schedule in which the two shared physical custody of the children. He further alleged that Lauren had recently informed him that she was moving from her home in Omaha, Nebraska, to Akron, Iowa, and that she intended to move the children with her. Franklin alleged that a move to Iowa was not in the children's best interests, and he therefore requested that he be awarded sole legal and physical custody. He further alleged that Lauren planned to move the children soon, and he therefore requested an order preventing removal of the children to Iowa and awarding him temporary legal and physical custody. The same day Franklin filed the motion, the district court entered an ex parte order in which it ordered that the children not be removed from Nebraska by either parent without the court's consent. The court, however, made no order regarding custody on that day.

Lauren thereafter filed an answer and counterclaim in which she admitted portions of Franklin's complaint, including his acknowledgment of paternity. Lauren, however, denied allegations supporting Franklin's request that he be awarded sole custody and child support. For her counterclaim, Lauren alleged that she was fit to be awarded joint legal and primary physical

custody of the children. She requested that she be awarded such custody and child support. She further alleged that she had obtained employment and had developed a support system in Iowa, and she therefore requested permission to remove the children from Nebraska to Iowa. Lauren also filed a motion for a temporary order allowing her to remove the children to Iowa during the pendency of this case. The district court again ordered that neither party remove the children from Nebraska without a court order.

The matter came before the court for trial on April 26, 2021. Both parties testified at the trial, and both called other witnesses. Because the assignments of error on appeal involve Lauren's request for removal and her allegations of domestic intimate partner abuse, the discussion below focuses on those aspects of the evidence.

Franklin presented testimony by (1) his girlfriend, (2) a woman who described herself as a godmother to Franklin and to the children and who lived with Franklin and his girlfriend, and (3) a neighbor of Franklin. Franklin's girlfriend and his godmother both testified that they helped care for the children, particularly when Franklin was at work. The neighbor also testified that her daughters regularly babysat the children. All three women generally testified that Franklin had a good relationship with the children and that the children had friends in the neighborhood and appeared to be happy living in Omaha.

Franklin also testified. With regard to Lauren's request to remove the children to Iowa, Franklin testified that he opposed the move, because he wanted to be a father to his children and the move would inhibit his ability to do so. He testified that it was a 2-hour drive to where Lauren planned to move in Iowa and that he wanted the children to be closer in case of an emergency or in case they needed him for anything when it was not his parenting time. Franklin testified that the children had an established pediatrician in Omaha. He also testified that he wanted the children to attend a bilingual Catholic school

in Omaha because it was important to him both that they learn Spanish and that they have religious training. He testified that he was concerned that if the children lived part of their time with him in Omaha and part of their time with Lauren in Iowa, it would limit their ability to take part in extracurricular activities at school. Franklin testified that he had family in Omaha with whom he wanted the children to spend time and that he would support the children spending time with Lauren's parents, who lived in Omaha. Franklin also testified that although Lauren claimed that she still lived in Omaha, he believed that she was already primarily residing in Iowa. He testified that Lauren had proposed that if the children moved with her to Iowa, Franklin's parenting time would be reduced from 50 percent of the time to every other weekend. On cross-examination, when asked whether he had ever slapped, pushed, or threatened Lauren or hit her with an open hand, Franklin replied, "No."

Franklin finally called Lauren as a witness. With regard to removal, Lauren testified that she was engaged to be married and that she wished to relocate to Iowa to live with her fiance and to work operating hog farms that her fiance had inherited. She testified that Omaha was still her residence but admitted that she frequently spent time at the farms in Iowa. Lauren testified that if she were allowed to remove the children to Iowa, she would enroll them in the public school there and the children would have more consistency and stability if Franklin's parenting time was every other weekend and the children could be in Iowa all weekdays during the school year. She testified that in Iowa, they would be residing in a close-knit community which included the family of her fiance. She testified that the children got along well with her fiance and that they had spent time on the farm.

During cross-examination by her own counsel, Lauren testified that coparenting with Franklin was "[v]ery difficult" because he often refused to take her phone calls and would not negotiate or compromise on matters. She testified that

when she and Franklin were together, their relationship was "very toxic, very negative," that the relationship was "abusive, both physically and verbally," and that "[t]here was lots of fighting in the home." When asked whether Franklin had ever "assaulted" her, "laid hands on" her, and "shoved" her, she answered, "Yes." Lauren testified that she had a scar on her face from an incident in which she went "to the hospital to get stitches in [her] eyebrow when [Franklin] beat [her] up when [one of the children] was three months and [the child] was in [her] arms." When asked whether she had concerns with Franklin's being around her, she replied, "That would depend. I mean, possibly." She testified that Franklin had been controlling during the relationship and that she believed he was trying to maintain control of her through the children.

After Franklin rested his case, Lauren called two witnesses—her mother and her fiance. Lauren's mother testified that she believed that the children enjoyed going to Iowa and that if they moved to Iowa, it would be "good for them" because it was a "positive" and "stable environment." She also testified that after Lauren and Franklin ended their relationship, Lauren told her that Franklin had been "abusive and controlling of her" and that one time, "she had gone to the hospital." Lauren's fiance generally testified that he got along well with the children and that he and Lauren would be able to provide a stable home for the children if she were permitted to move the children to Iowa.

After the hearing, the district court issued a decree in which it found, inter alia, that Franklin and Lauren were the biological parents of the two children. The court determined that it was in the children's best interests that Franklin and Lauren be awarded joint legal custody and joint physical custody. The court approved a parenting plan that generally provided for a "2-2-3 schedule" in which each parent would have physical custody for two regular weekdays and the parents would alternate 3-day weekends. The decree also addressed issues of child support, health insurance, health care expenses, tax

exemptions, education expenses, and attorney fees and costs. Further detail on subjects not at issue on appeal are not provided herein. Issues on appeal relate to Lauren's request to remove the children to Iowa and her allegations of abuse, and therefore, the portions of the decree addressing those issues are set forth below in their entireties.

With regard to removal, the court stated in the decree: "**REMOVAL**. The Defendant [Lauren] has failed to meet her burden and the children are not permitted to be removed from the State of Nebraska. Nebraska shall remain the home state of the children."

The court addressed allegations of abuse in a section regarding physical custody, which stated:

> **PHYSICAL CUSTODY.** It is in the best interests of the minor children that the parties be awarded joint physical custody of the minor children subject to the parenting time as set forth in the Court approved Parenting Plan that is attached hereto as Exhibit "A" and incorporated herein by this reference. The Court finds by a preponderance of the evidence there has been domestic abuse between the parties. The Court, pursuant to Neb. Rev. Stat.§ 49-2932 [sic] (Reissue 2016), has taken this section into consideration in adopting the parenting plan. Section 43-2932 is designed to protect a parenting [sic] from potential arm [sic] by the other parent as a result of past harmful conduct. The Court further finds that the Parenting Plan attached hereto as Exhibit "A" concerning the care, custody, control, and visitation schedule for the parties' minor children and said Parenting Plan is fair, reasonable, in the best interests of the parties' minor children and not unconscionable. The Court further finds that said Parenting Plan should be adopted by this Court as a part of this Decree of Paternity, Custody, and Support.

Lauren appeals issues of the district court's decree regarding custody.

## ASSIGNMENTS OF ERROR

Lauren claims that the district court erred when it applied an improper burden of proof to determine whether she could remove the children to Iowa and when it determined that removal was not in the children's best interests. She also claims that the district court erred when it failed to comply with the statutory requirement to make "special written findings" under Neb. Rev. Stat. § 43-2932 (Reissue 2016).

## STANDARDS OF REVIEW

[1] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020).

[2,3] Statutory interpretation presents a question of law. *Id*. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id*.

## ANALYSIS

*District Court Erred as Matter of Law When*
*It Applied Standard That Put Burden on*
*Lauren Regarding Removal.*

Lauren first claims that the district court erred as a matter of law when it applied the wrong standard to its consideration of her request to remove the children to Iowa. We agree with Lauren's contention. As explained more fully below, because this was a case involving children born out of wedlock and there had been no judicial determination of child custody prior to this proceeding, the burden related to removal applicable in other circumstances did not apply. The language of the district court's order indicates that the court improperly put a burden on Lauren with regard to removal, and in view of our precedent, we conclude that the court erred as a matter of law.

Lauren contends that the district court's statement that she "failed to meet her burden" with regard to removal shows that the court mistakenly applied the "true removal" analysis set forth in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). She argues that because the present action was a paternity proceeding in which there had been no initial judicial determination of custody issues prior to the commencement of this action, the analysis set forth in *Farnsworth*, including the burden placed on the parent seeking to remove the children, does not apply and instead the court should have determined matters of custody, including removal, by considering parental fitness and the best interests of the children based on evidence presented by both parties.

*Farnsworth*, sometimes referred to as a "true removal" case, was a case involving a request to modify an existing decree of dissolution which included custody orders. In *Farnsworth*, one parent sought to remove a child to another state. In *Farnsworth*, we stated that to prevail on such a request, "the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state." 257 Neb. at 249, 597 N.W.2d at 598. We stated that "[a]fter clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her" and that "whether a proposed move is in the best interests of the child is the paramount consideration." *Id*. In *Farnsworth*, we set forth "three broad considerations" that should enter into a court's decision as to whether removal is in a child's best interests. 257 Neb. at 249, 597 N.W.2d at 598. These include: (1) "each parent's reasons for seeking or opposing the move," (2) "the potential that the move holds for enhancing the quality of life for the child and the custodial parent," and (3) "the impact such a move will have on contact between the child and the noncustodial parent (when viewed in the light of reasonable visitation arrangements)." *Id*. at 249-50, 597 N.W.2d at 598. We stated that the list of factors was "not meant to be

exhaustive" and should instead "serve as appropriate guide-posts." *Id.* at 252, 597 N.W.2d at 599.

We later determined in a paternity case that the *Farnsworth* burden analysis was not applicable to an initial determination of custody. In *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004), an action involving a child who was born out of wedlock and regarding whom there was no prior judicial determination of custody, we concluded that the trial court was not required to apply the *Farnsworth* standard. In *Pathammavong*, the father and mother had never been married, and although the State had initiated paternity proceedings that resulted in a court order finding the father to be the child's father and ordering him to pay child support, no judicial custody determination had been made in the case prior to the proceeding on appeal. Several years after the paternity and child support order was entered, the father, living in Texas, filed an application seeking child custody and child support. The district court awarded custody of the child to the father, allowing the child to live with the father in Texas.

[4] On appeal, the mother in *Pathammavong* argued that "the two-part test from *Farnsworth*" should have been applied. 268 Neb. at 6, 679 N.W.2d at 755. We described that test as requiring "a custodial parent who is seeking permission to relocate to another state with a minor child to prove that the parent has a legitimate reason for leaving the state and that such a move is in the best interests of the child." *Id.* We distinguished the posture of *Pathammavong* from that of *Farnsworth* on the basis that *Pathammavong* did not involve "parental relocation or the modification of a previous court-ordered custody agreement." 268 Neb. at 6, 679 N.W.2d at 755. Modification was not at issue in *Pathammavong*, because the proceeding was the first proceeding which would result in a permanent judicial "order assigning custody to one parent or the other." 268 Neb. at 6, 679 N.W.2d at 755. We stated that the issue before the court was not whether one parent should be allowed to relocate

with the child, but instead "which parent should be awarded permanent custody of [the child] as a matter of initial judicial determination." *Id.* We therefore concluded that to resolve the disputed custody issue, rather than using the *Farnsworth* standard as it pertained to the threshold burden, the issue "must be resolved on the basis of the fitness of the parents and the best interests of the child." 268 Neb. at 6, 679 N.W.2d at 755.

Since *Pathammavong*, we do not appear to have further considered the applicability or inapplicability of the *Farnsworth* standard in cases involving a child born out of wedlock in which there has been no initial judicial determination of custody prior to the commencement of the present proceeding. However, the Nebraska Court of Appeals has considered such cases. Most notably, in *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009), the Court of Appeals cited our decision in *Pathammavong*, in a paternity case in which the father sought to prevent the mother from removing the children from Nebraska when there was no prior judicial determination of custody. The Court of Appeals recognized that the facts of *Coleman* were not squarely on point with those in *Pathammavong*, because the father in *Pathammavong* had already been living in Texas for a number of years at the time he filed the proceeding, whereas the mother in *Coleman* did not complete her move out of state until after the father filed his complaint but before the court heard it. In *Coleman*, the Court of Appeals determined that the essential factors in our holding in *Pathammavong* were that the child was born out of wedlock and that given the absence of an initial judicial determination of custody, modification of a previous court-ordered custody determination was not being sought.

The Court of Appeals declined in *Coleman* to apply the full *Farnsworth* removal analysis, which included the threshold burden as to whether the parent seeking to move the children out of state has proved that he or she has a legitimate reason for leaving the state. As we stated in *Pathammavong*, where the paternity proceeding is conducted to determine "which

parent should be awarded permanent custody of [the child] as a matter of initial judicial determination," the issue "must be resolved on the basis of the fitness of the parents and the best interests of the child." 268 Neb. at 6, 679 N.W.2d at 755. The Court of Appeals recognized in *Coleman* that other than the threshold burden on the parent planning to move the children out of state, the additional *Farnsworth* factors were relevant to a court's considerations to determine custody based on the best interests of the child.

The Court of Appeals has applied its reasoning in *Coleman* in subsequent cases, including, inter alia, *Shandera v. Schultz*, 23 Neb. App. 521, 876 N.W.2d 667 (2016), which involved a paternity proceeding that the father filed shortly after the mother moved out of state. The Court of Appeals determined that the district court properly followed the reasoning in *Coleman* that Nebraska's removal jurisprudence as it bore on burdens did not apply in that circumstance involving an initial custody determination but that it was proper to give some consideration to the other *Farnsworth* factors in determining custody based on the child's best interests. Most important, the Court of Appeals in *Shandera* noted with approval that "the trial court recognized that [the mother] did not have the burden of proof that she would have in a true removal case." 23 Neb. at 531, 876 N.W.2d at 676.

Synthesizing the appellate case law, some of which is discussed above, shows that with respect to removal, whether the *Farnsworth* threshold burden applies depends upon several factors. Those factors include whether the action is one for dissolution or paternity, whether a permanent custody order has already been entered, and whether physical custody is being awarded to a parent who has never resided in Nebraska. Generally, the threshold burden applies in dissolution cases as to both initial and subsequent proceedings. See, *Kalkowski v. Kalkowsi*, 258 Neb. 1035, 607 N.W.2d 517 (2000) (initial); *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999) (modification); *Rommers v. Rommers*, 22 Neb. App.

606, 858 N.W.2d 607 (2014) (initial). But when a court is making an initial custody determination in a dissolution case where one party has never resided in Nebraska, a separate *Farnsworth* analysis is not necessary when awarding physical custody to the out-of-state parent. *Taylor-Couchman v. DeWitt-Couchman*, 29 Neb. App. 950, 964 N.W.2d 320 (2021). In paternity cases, the *Farnsworth* burden applies to subsequent modification proceedings, see *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015), and *State on behalf of Ryley G. v. Ryan G.*, 306 Neb. 63, 943 N.W.2d 709 (2020), but not to initial custody determination proceedings, see *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004), and *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009). Nonetheless, it is appropriate to apply *Farnsworth* general considerations in each of the foregoing proceedings.

Applying the jurisprudence set forth above to this case, we determine that the district court's statement that Lauren "failed to meet her burden" shows that in this initial custody judicial determination in this paternity case, the district court mistakenly applied a true *Farnsworth* removal standard which improperly put the burden on Lauren to show that she had a legitimate reason to move to Iowa and that the proposed move to Iowa was in the children's best interests. Instead, the court should have made an initial custody determination based on parental fitness and the children's best interests by considering evidence presented by both parties, including evidence related to Lauren's plans to move the children to Iowa and Franklin's evidence regarding the effect of such a move on the exercise of his parental rights. We conclude that the district court erred as a matter of law when it applied the wrong standard.

Lauren further claims that under a proper best interests analysis, the district court abused its discretion in this case when it refused to award her primary custody in Iowa. We will discuss this claim further after we review Lauren's assignment of error regarding the finding of domestic abuse.

*After the District Court Found Domestic*
*Abuse to Be Present, the District Court*
*Failed to Make Statutorily*
*Required Findings.*

Lauren next claims that the district court erred when it failed to comply with the requirement to make "special written findings" under § 43-2932. She argues that after the court found that Franklin had committed "domestic abuse," it failed to make the required special written findings, that it failed to hold Franklin to his burden of proof with regard to such findings, and that it failed to include anything in the parenting plan that specifically addresses the issue of domestic abuse. We agree that under § 43-2932, the district court's findings were not sufficient, and we determine that the matter should be remanded for the court to make the required findings and to modify the parenting plan as necessary to address the domestic abuse it found to exist.

With regard to the court's finding of domestic abuse, § 43-2932 provides in relevant part as follows:

(1) When the court is required to develop a parenting plan:

(a) If a preponderance of the evidence demonstrates, the court shall determine whether a parent who would otherwise be allocated custody, parenting time, visitation, or other access to the child under a parenting plan:

. . . .

(iii) Has committed domestic intimate partner abuse[.]

. . . and

(b) If a parent is found to have engaged in any activity specified by subdivision (1)(a) of this section, limits shall be imposed that are reasonably calculated to protect the child or child's parent from harm. The limitations may include, but are not limited to:

(i) An adjustment of the custody of the child, including the allocation of sole legal custody or physical custody to one parent;

(ii) Supervision of the parenting time, visitation, or other access between a parent and the child;

(iii) Exchange of the child between parents through an intermediary or in a protected setting;

(iv) Restraints on the parent from communication with or proximity to the other parent or the child;

(v) A requirement that the parent abstain from possession or consumption of alcohol or nonprescribed drugs while exercising custodial responsibility and in a prescribed period immediately preceding such exercise;

(vi) Denial of overnight physical custodial parenting time;

(vii) Restrictions on the presence of specific persons while the parent is with the child;

(viii) A requirement that the parent post a bond to secure return of the child following a period in which the parent is exercising physical custodial parenting time or to secure other performance required by the court; or

(ix) Any other constraints or conditions deemed necessary to provide for the safety of the child, a child's parent, or any person whose safety immediately affects the child's welfare.

. . . .

(3) If a parent is found to have engaged in any activity specified in subsection (1) of this section, the court shall not order legal or physical custody to be given to that parent without making special written findings that the child and other parent can be adequately protected from harm by such limits as it may impose under such subsection. The parent found to have engaged in the behavior specified in subsection (1) of this section has the burden of proving that legal or physical custody, parenting time, visitation, or other access to that parent will not endanger the child or the other parent.

In the section of its order addressing physical custody, the court stated that it found "by a preponderance of the evidence

there has been domestic abuse between the parties." The only evidence of abuse in the case was that Franklin had abused Lauren. Franklin did not cross-appeal challenging the court's finding. Although the court did not use the statutory expression "domestic intimate partner abuse," we note that immediately after making the finding of domestic abuse, the court made references to § 43-2932. We therefore read the court's finding as a finding under § 43-2932(1)(a)(iii) that Franklin had committed "domestic intimate partner abuse."

Because the court made a finding of domestic intimate partner abuse, certain requirements ensued. First, under § 43-2932(1)(b), the court was required when developing a parenting plan to impose limits that "are reasonably calculated to protect the child or child's parent from harm." In addition, § 43-2932(3) required that the court could not award legal or physical custody to Franklin "without making special written findings" that Lauren and the children could be "adequately protected from harm by such limits" that the court imposed under § 43-2932(1). Section 43-2932(3) further provided that Franklin, as the "parent found to have engaged in the behavior," had "the burden of proving that legal or physical custody, parenting time, visitation, or other access to [Franklin] will not endanger the child[ren] or [Lauren]."

[5] We held in *Flores v. Flores-Guerrero*, 290 Neb. 248, 253, 859 N.W.2d 578, 584 (2015), that because of the Legislature's use of the word "shall" throughout § 43-2932, "where a preponderance, or the greater weight, of the evidence demonstrates that a parent has committed one of the listed actions [in § 43-2932(1)(a), including 'domestic intimate partner abuse'], the obligations of § 43-2932 are mandatory." We determined in *Flores* that despite evidence of domestic intimate partner abuse, the district court failed to make a determination as to the existence thereof and that "[m]ore important, the district court failed to make the written findings required by § 43-2932(3) before awarding joint physical custody" and that "this failure by the district court precluded it from making the

custody determination it did." 290 Neb. at 255, 859 N.W.2d at 585. We concluded in *Flores* that "to the extent the district court made a custody determination . . . without complying with § 43-2932, it abused its discretion" and that "[u]nder these circumstances, the district court's custody determination must be vacated." 290 Neb. at 256, 859 N.W.2d at 585. We therefore remanded the cause for further proceedings consistent with our opinion.

In the present case, the district court found that Franklin had committed domestic intimate partner abuse. After making the finding of abuse, the court referred to § 43-2932 and stated that it had "taken this section into consideration in adopting the parenting plan." This statement is not enough. A mere assurance that the court had "taken [§ 43-2932] into consideration" or that the parenting plan is fair does not qualify as the "special written findings" required under § 43-2932(3); the parties and an appellate court should not be left to divine the court's reasoning or presume any specific findings by the court. We conclude that the court's remark was inadequate to meet the requirements of § 43-2932(3).

[6] Our appellate courts have stressed the importance of explicit findings under § 43-2932(3). See, *Gandara-Moore v. Moore*, 29 Neb. App. 101, 952 N.W.2d 17 (2020); *Fales v. Fales*, 25 Neb. App. 868, 914 N.W.2d 478 (2018). The court must at a minimum specifically state that it finds that the children and the other parent may be adequately protected from harm by the limits the court has actually imposed in the parenting plan. The court's findings should also indicate that the court recognized that the burden on this issue was on the parent found to have committed the abuse. The court should further identify what limits it imposed in the parenting plan that it finds will provide the necessary protection. This is particularly true in a case such as the present case where it is not clear that the court imposed any of the specific limits listed in § 43-2932(1)(b). While § 43-2932(1)(b)(ix) allows "other constraints or conditions" not specifically included in the list,

it would be helpful for the court to identify what limits it has placed to ensure adequate protection.

Because the district court failed to make the "special written findings" required by § 43-2932(3), the court abused its discretion when it awarded shared legal and physical custody to Franklin. See § 43-2932(3) ("the court shall not order legal or physical custody to be given to that parent without making special written findings") and *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015). As in *Flores*, we must vacate the order which granted Franklin shared legal and physical custody and remand the cause for further proceedings.

*On Remand, the District Court Should Reconsider
Custody Matters by Applying Standards
and Making Required Findings as
Set Forth in This Opinion.*

As we noted above, Lauren also claims that if the court had applied the proper standard, the district court's order that she not remove the children to Iowa was an abuse of discretion. However, our conclusion that we must vacate the order based on the failure to make the special written findings required under § 43-2932(3) obviates the need to consider whether the court also abused its discretion with regard to Lauren's plans to move the children to Iowa. Instead, on remand, the district court should reconsider its custody determination by, inter alia, making the findings required by § 43-2932(3) to determine whether Franklin may be awarded custody of any description and applying the proper standard set forth herein to consider Lauren's proposal to move the children to Iowa.

## CONCLUSION

We conclude that the district court erred as a matter of law when it applied an incorrect legal standard with respect to removal. Because this was an initial custody determination involving children born out of wedlock, the court should have considered Lauren's plan to move the children to Iowa as

part of its analysis of all factors relevant to the best interests of the children. We further conclude that after it found domestic intimate partner abuse was present in this case, the court failed to make the special written findings required by § 43-2932(3), and that because it failed to make such findings, it erred when it awarded shared legal and physical custody to Franklin. We therefore vacate the order and remand the cause for further proceedings consistent with this opinion.

JUDGMENT VACATED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.